# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   **v.**                                          **Case No. 06-CR-299**

**GABINO ALFARO-GARCIA**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Gabino Alfaro-Garcia pleaded guilty to conspiracy to distribute cocaine, contrary to 21 U.S.C. §§ 841(b)(1)(B) & 846, based on his provision of one kilogram of cocaine to two co-defendants, who in turn attempted to deliver it to a cooperating informant. The probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. Based on additional relevant conduct, the PSR set defendant's offense level at 32 based on a drug weight of 5 to 15 kilograms of cocaine, U.S.S.G. § 2D1.1(c)(4), then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final offense level of 29. Coupled with a criminal history category of II, the PSR recommended an imprisonment range of 97-121 months under the advisory sentencing guidelines.

Neither side objected to the PSR, but defendant requested a departure under U.S.S.G. § 4A1.3(b) and a non-guideline sentence of five years, the mandatory minimum, under 18 U.S.C. § 3553(a). Upon consideration of all of the relevant factors and the arguments of counsel, I imposed a sentence of 78 months in prison.

### I. SENTENCING PROCEDURE

In imposing sentence, the court must consider the factors set forth in § 3553(a), which

include:

>    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>    (2)   the need for the sentence imposed–
>
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>    (B) to afford adequate deterrence to criminal conduct;
>
>    (C) to protect the public from further crimes of the defendant; and
>
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>    (3)   the kinds of sentences available;
>
>    (4)   the advisory guideline range;
>
>    (5)   any pertinent policy statements issued by the Sentencing Commission;
>
>    (6)   the need to avoid unwarranted sentence disparities; and
>
>    (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). While the Seventh Circuit considers traditional guideline departures obsolete in the post-Booker era, see, e.g., United States v. Spano, 476 F.3d 476, 480 (7th Cir. 2007), the sentencing court may continue under § 3553(a)(5) to consider the Commission's policy statements on departures in determining whether the guidelines produce a good fit in the instant case. The ultimate statutory directive is to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2).

## II. DISCUSSION

### A. Nature of Offense

Defendant supplied a significant amount of cocaine – 5 to 15 kilograms – over the

course of about two years. The conduct was serious based on the amounts involved and the length of time over which it occurred. However, I accepted defendant's statement that he used dealing to supplement his legitimate income and send money back to his family in Mexico, and also to obtain cocaine for personal use. He did not become wealthy from his criminal activity. Further, the offense was not aggravated by violence or weapon possession.

**B.     Character of Defendant**

A twenty-nine year old citizen of Mexico, defendant came to this country in 1997 for financial reasons. Once here, he received convictions for exposing himself to a minor, drunk driving twice and disorderly conduct. He received a sentence of probation on the first case and fines on the others.

While this was certainly not the worst record I have seen, I did not believe that placing him in criminal history category II resulted in an over-statement of his criminal history. See U.S.S.G. § 4A1.3(b) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."). Defendant received four convictions between 2000 to 2004, immediately preceding his commencement of the instant criminal conduct, which occurred from 2004 to 2006. Thus, his record was not remote, see U.S.S.G. § 4A1.3 cmt. n.3 ("A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."), and given the number of contacts, I did not find it appropriate to compare him to someone in category I, who must have no record or just 1 point.

3

Defendant noted that his two drunk driving cases were handled as civil ordinance violations. Wisconsin does treat first offense drunk driving civilly. See Wis. Stat. § 346.65(2)(a). However, it appeared that defendant's second such conviction from 2004 should have been charged criminally, rather than handled in municipal court, as it represented his second drunk driving conviction within five years. See Wis. Stat. § 346.65(b).[1] He apparently received a break there, as he would have faced mandatory jail time had that case been charged as a second offense. Id. Defendant noted that he was not entitled to counsel in these civil cases, but the PSR indicated that he did have a lawyer on the second case.

Defendant's other scored offense, for exposing genitals to a minor, arose out of a consensual sexual encounter with a fourteen year old girl he believed to be eighteen. Again, defendant may have gotten a break there, resolving the case as a misdemeanor when he probably could have been charged with statutory rape. See, e.g., State v. Jadowski, 272 Wis. 2d 418 (2004).

Defendant also had a state, criminal disorderly conduct conviction. That case did not score points under U.S.S.G. § 4A1.2(c)(1), but I still considered it in evaluating the nature and extent of his criminal history. That case arose out of a domestic dispute and involved defendant forcibly pulling the female victim out of her car.

Therefore, for all of these reasons, I could not conclude that placing defendant in category II overstated the seriousness of his record. Nor, given his criminal conduct from 2000 to 2006, when he was arrested for this offense, could I conclude that category II overstated his risk of recidivism. Thus, I declined to impose a lesser sentence on this basis under U.S.S.G.

---

[1] Currently, Wisconsin treats as criminal a second offense committed within ten years. The statute formerly included a five year window.

4

§ 4A1.3 and 18 U.S.C. § 3553(a)(5).

Aside from his record, defendant's character and background were positive. I accepted that he worked for cash in this country. The probation office was unable to obtain employer verification, but that was not surprising given his status. His life in Mexico was poor, and he came here looking for a better life, albeit without inspection. He sent money back to his family in Mexico. Given his status, he faced deportation upon completion of his sentence.

Defendant was married and had two children with his wife, one age two, the other a baby born while he was in custody on this matter. His wife made positive statements about him and indicated that she planned to follow him to Mexico after his removal. She wrote a letter to the court, which depicted defendant as someone with a lot of good qualities. Defendant also had a seven year old child from a previous relationship, and the mother of that child also had good things to say about him. He seemed to be a good and involved father.

Defendant admitted a history of alcohol and cocaine abuse, for which he had received limited treatment. I recommended treatment through the Bureau of Prisons, but because of his status as a deportable alien he was not eligible for any sentence reduction under those programs.

**C.   Guidelines**

The guidelines called for a term of 97-121 months. Under all of the circumstances, I found that range somewhat greater than necessary. Defendant was a non-violent, first-time drug offender who posed little or no danger to the public. See 18 U.S.C. § 3553(a)(2)(A) & (C). Further, the range did not account for the positives in defendant's character and background, including his work history and family ties, discussed above. Nor did the guidelines account for the effect of defendant's incarceration and deportation on his family. His wife and

5

children, all U.S. citizens, planned to follow him to Mexico upon completion of his sentence, which would cause considerable hardship for them. Defendant expressed great remorse for this result of this conduct. Finally, defendant had never before served any jail time. Generally, courts should impose incremental punishment to achieve deterrence. A guideline sentence was somewhat greater than necessary to deter defendant from re-offending, given the nature of his prior sentences. See 18 U.S.C. § 3553(a)(2)(B).

Defendant requested a sentence of five years – the statutory minimum – but that was insufficient. Specifically, such a sentence would have failed to promote respect for the law and provide just punishment, given the amount of cocaine defendant distributed. See § 3553(a)(2)(A). It would also be disproportionate to sentence someone responsible for 5-15 kilograms as if he had distributed only the 500 grams necessary to trigger the five year term.

### III.  CONCLUSION

Under all of the circumstances, I found a sentence of 78 months sufficient but not greater than necessary. This sentence adequately accounted for the mitigating factors mentioned, while still providing just punishment and deterrence. Because it varied from the guidelines by only 2 levels and was based on the particular facts of the case it did not create unwarranted disparity. § 3553(a)(6).

Dated at Milwaukee, Wisconsin, this 9th day of June, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

6